

**ORDERED in the Southern District of Florida on June 1, 2015.**

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

ANTHONY MCKNIGHT WARREN,                   Case No. 15-11878-BKC-AJC

Debtor.                                    Chapter 13

_____/

**ORDER SUSTAINING TRUSTEE'S
OBJECTION TO CONFIRMATION [ECF NO. 28]**

THIS CAUSE came before the Court for hearing on April 21, 2015 at 1:30 p.m., upon the Chapter 13 Trustee's *Notice of Deficiency for Confirmation* ("Objection") [ECF No. 28]. The Court having considered the record in this case and the applicable case law, the Objection is SUSTAINED.

**I. Procedural Background**

On January 30, 2015, Anthony McKnight Warren ("Debtor") filed for relief under Chapter 13 of the Bankruptcy Code. The Debtor filed his Chapter 13 plan [ECF No. 9] which

proposes to pay his unsecured creditors a total of $1,956.00 over the course of 60 months. The Debtor has listed in his summary of schedules, a total of $145,353.84 in creditors holding unsecured nonpriority claims [ECF No. 1, page 6]. The Debtor filed a "Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period for 5 Years Form 22C-1" ("22C-1 Form") [ECF No. 3] and a "Chapter 13 Calculation of Your Disposable Income Form 22C-2" ("22C-2 Form") [ECF No. 4]. The Debtor's 22C-1 Form reflects current monthly income in the amount of $10,665.58. Pursuant to the C22-1 Form's line 15b, the Debtor has an annual income of $127,986.96. This income exceeds the median family income for a household of two (2) in the state of Florida, as stated on C22-1 line 16c. Therefore, the Debtor is considered "an above median income debtor."

On line 33d of the C22-2 Form [ECF No. 4], Debtor lists a $255.50 per month expense to Bank of the West for a 2002 Proline boat. The Debtor's employment is in the field of law enforcement [ECF No. 1, page 22] and does not require the use of the boat for work.

On line 45 of the C22-2 Form, the Debtor lists monthly disposable income of $71.10, or $4,266.00 over 60 months. The Debtor's proposed Chapter 13 plan [ECF No. 9] pays a total of $1,956.00 to the general unsecured creditors.

The Trustee objected to the boat expense on the basis that it unfairly reduces the Debtor's disposable income to the detriment of the Debtor's unsecured creditors. The Trustee contends that the Debtor is not permitted to claim an expense for a "luxury item" that is not used in Debtor's employment and is not necessary for Debtor's support or the support of Debtor's dependents. The Debtor argued that the boat expense is a contractually due expense and therefore should be permitted.

**II. Issue Presented**

Can an above median Debtor reduce his disposable income, and thereby reduce payments to unsecured creditors, by paying $255.50 per month for a boat which is not used by Debtor for his employment and is not necessary for Debtor's support or the support of Debtor's dependents.

**III. Discussion**

A debtor filing a Chapter 13 bankruptcy case is required to file a plan that provides for the remittance of a portion of the Debtor's future income to the supervision and control of the trustee for payment to creditors upon confirmation of the plan. *See* 11 U.S.C. §§ 1321 and 1322. When a creditor or the trustee objects to a plan, a bankruptcy court will not approve or confirm the plan unless, as of the effective date of the plan, it provides for a 100% payment of claims or dedicates all projected disposable income during the life of the plan to be applied to payments to unsecured creditors.

The plan at issue does not make a 100% distribution to creditors. Therefore, the plan must satisfy the criteria found in 11 U.S.C. §1325(b)(1)(B) that all projected disposable income be distributed to unsecured creditors. Section 1325(b)(2) defines the term "disposable income" to mean current monthly income[1] received by the debtor, less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C.

---

[1] 11 U.S.C. § 101(10A) provides:
    The term "current monthly income"—
    (A)    means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—
        (i)    the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by 11 U.S.C. § 521 (a)(1)(B)(ii); or
        (ii)    the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by 11 U.S.C. § 521(a)(1)(B)(ii); and
    (B)    includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's

3

§1325(b)(2)(A)(i). Amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor shall be determined in accordance with subsections (A) and (B) of 11 U.S.C. §707(b)(2) if the debtor's income is above median, which is the circumstance in this case. Section 707(b)(2)(A)(iii) states that:

> *the debtor's average monthly payments on account of secured debts shall be calculated as the sum of -*
>
> > *(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and*
> >
> > *(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;*
>
> *divided by 60.*

The Trustee objected to the Debtor's boat expense on the basis that it unfairly reduces the Debtor's disposable income to the detriment of the Debtor's unsecured creditors. The Trustee argues that retention of the boat is not a reasonable or necessary expense of the Debtor or for the maintenance and support of his dependants. The Debtor argues that the statutory means test incorporated in the C22-1 Form and C22-2 Form permits the deduction of payments for all secured debts. Debtor assets that, notwithstanding subsection (II) which permits the inclusion of additional payments necessary to maintain possession only on the debtor's primary residence, motor vehicle, or other property necessary for the support of debtor or debtor's dependents, subsection (I) of section 707(b)(2)(A)(iii) does not qualify or limit the kind of secured debt that may be deducted from current monthly income. Debtor believes that he is permitted to reduce

---

dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act…

his income by regular contractual payments to every secured creditor regardless of the collateral securing those payments.

The Court is not persuaded by Debtor's argument. The Court believes that, if all secured debts were included in subsection (I) of section 707(b)(2)(A)(iii), then there would be no need for subsection (II), which discusses any additional payments which may be allowable expense deductions. It is clear to the Court that both subsection (I) and (II) related to each other and are each limiting in their own respects with regard to permissible expenses. A luxury boat is not necessary for the support of the Debtor or the Debtor's dependents, and is not otherwise included as an allowable or permissible expense for purposes of calculating disposable income.

"Congress adopted the means test . . . to help ensure that debtors who *can* pay creditors *do* pay them." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64, 131 S. Ct. 716, 721, 178 L. Ed. 2d 603 (2011). The statute's purpose—to ensure that debtors pay creditors the maximum they can afford—is best achieved by interpreting the means test, consistent with the statutory text: "amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or dependent of the debtor . . . ." *In re Hicks*, No. 10-41855-JJR-13, 2011 WL 2414419, at *4 (Bankr. N.D.Ala. June 15, 2011). Thus, if a proposed payment under a plan is for the retention of property that is not reasonably necessary for the maintenance or support of the debtor or his dependents, it may not be deducted when the determination is made regarding what sums should be paid to unsecured creditors. *In re Hicks*, 2011 WL 2414419, at *4.

In *Hicks*, the debtors were above median debtors who owned four (4) vehicles, all of which they proposed to retain under the plan. 2011 WL 2414419, at *2. They owed purchase money loans on a Cadillac and a Harley motorcycle; monthly Plan payments for the Cadillac were $242.40 and $191.15 for the motorcycle. *Id*. They also owned a Chevrolet Silverado and

Honda Odyssey, both of which were paid for. *Id*. The *Hicks* court found that the debtors' Chapter 13 Plan was not confirmable in part because they have insisted on paying for two vehicles when they have two others that are fully paid for. *Id*. at *7. Under the totality of the circumstances, and after applying the factors in *Kitchens v. Georgia Railroad Bank and Trust Co. (In re Kitchens),* 702 F.2d 885 (11th Cir.1983), the *Hicks* court concluded the plan was not proposed in good faith. *Id*.

In re Sandberg, 433 B.R. 837 (Bankr.D.Kan.2010) also supports the proposition that a bankruptcy court may refuse to confirm a plan that proposes to retain a boat. *Id.* at 841. The *Sandberg* court concluded:

> [E]ven though the debtor may technically comply with the projected disposable income test of § 1325(b)(1)(B) and (b)(3)... [u]nder the ... totality of circumstance factors [adopted by the Tenth Circuit in *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983) ], debtors' plan has not been proposed in good faith, notwithstanding the permitted deduction of the secured debt payment on the boat.... [T]he debtors' plan cannot be confirmed because it is 'fundamentally inappropriate' to permit the debtors to discharge so much unsecured debt while still retaining and enjoying a luxury item. Holding otherwise would defy the letter and spirit of chapter 13.

*Id.* at 848.

The Debtor proposes to pay $15,330.00 over the pendency of the case towards his recreational boat that is not reasonably necessary for the maintenance or support of the Debtor or the Debtor's dependents while paying only $1,956.00 to his unsecured creditors. The Debtor has listed a total of $145,353.84 in unsecured non-priority claims [ECF No. 1] which equates to a total repayment of 1.34%. Applying the *Kitchens* standards to the instant case, the Court believes the Debtor's Chapter 13 plan is not proposed in good faith. This Court adopts the rational cited by the *Hicks* court:

> [t]he Debtors' argument requires an interpretation of § 1325(b) that leads to an absurd result. If their argument is adopted, then chapter 13 debtors my [sic] shield their post-petition income from unsecured creditors by reducing, or even eliminating their disposable income on the means test by deducting monthly plan payments for debts secured by Rolex watches, Mercedes automobiles, beach condos, and yes, even motorcycles—all beyond the pale of what is reasonably necessary for their maintenance and support. At the end of such a plan, the debtor will receive a discharge and fresh start that will be augmented by the equity allowed to accumulate by virtue of servicing these secured claims with monies that otherwise would be paid to unsecured creditors. Only above-median debtors could take advantage of these deductions since the means test is not consulted in calculating the amounts under-median debtors are required to pay.

Hicks, 2011 WL 2414419, at *4 (citing *In re Dew,* 344 B.R. 655 (Bankr. N.D.Ala. 2006)).  Thus, for the reasons stated herein, it is

**ORDERED AND ADJUDGED** that the Objection is SUSTAINED.  The Debtor shall have 14 days from the entry of this Order to amend the C22-2 Form to remove the $255.50 monthly boat expense and file an amended Chapter 13 Plan in accordance with the Court's ruling, or this case may be dismissed without further notice or hearing.

###

Submitted by and copies to:

Nancy K. Neidich, Esq.
Standing Chapter 13 Trustee
Jose Miceli, Esq.
Staff Attorney
P.O. BOX 279806
MIRAMAR, FL 33027
(954) 443-4402

Trustee Nancy K. Neidich shall serve a conformed copy of this Order on all interested parties immediately upon receipt of same and shall file a certificate of service of same.